UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIE M. KRAJACK-MEER,           )
                                 )
          Plaintiff,             )   CASE NO. C06-766-TSZ-MJB
                                 )
     v.                          )   REPORT AND
                                 )   RECOMMENDATION
MICHAEL J. ASTRUE,[1]            )
Commissioner of Social Security, )
                                 )
          Defendant.             )
_____)

Plaintiff Julie M. Krajack-Meer appeals to the District Court from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits under Title II of the Social Security Act. For the reasons set forth below, it is recommended that the Commissioner's decision be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") on December 1, 1999, alleging disability since June 27, 1998, and identifying her impairments as depression, anxiety and panic attacks. Tr. 119. The Social Security Administration denied Plaintiff's application initially (Tr. 88-91) and upon reconsideration (Tr. 94-97). On April 23, 2001, Administrative Law Judge ("ALJ") John F. Bauer held a hearing and took testimony from Plaintiff, who was represented

---

[1] Michael J. Astrue, who was sworn in as Commissioner of Social Security on February 12, 2007, is substituted as defendant pursuant to F.R.C.P. 25(d)(1) and 42 U.S.C. § 405(g).

REPORT AND RECOMMENDATION
PAGE - 1

by counsel. Tr. 32-59. On June 29, 2001, ALJ Bauer issued a decision finding Plaintiff not disabled as defined in the Act. Tr. 255-70. Plaintiff appealed the ALJ's decision to the Appeals Council and the case was remanded for ALJ Bauer to consider lay witness evidence and to obtain evidence from a vocational expert to clarify the impact of the assessed limitations on claimant's occupational base. Tr. 271-73.

On November 18, 2002, ALJ Bauer held a second hearing and took testimony from Plaintiff, who was represented by counsel, and from vocational expert Paul H. Tomita. Tr. 60-83. On February 3, 2003, ALJ Bauer issued a decision finding Plaintiff not disabled. Tr. 6-16. On September 29, 2003, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, (Tr. 3-4), and on October 27, 2003, Plaintiff filed an appeal in the United States District Court, Western District of Washington. Tr. 405. By a stipulated order dated April 5, 2004, the district court reversed and remanded for further administrative proceedings, including a de novo hearing requiring re-evaluation of Plaintiff's alleged impairments and residual functional capacity. Tr. 406.

On January 14, 2005, a de novo hearing before ALJ Arthur Joyner was held. Tr. 523-580. Plaintiff, who was represented by counsel, testified at the hearing, as did medical experts Robert Nielsen, M.D.; Norm Gustavson, Ph.D.; and vocational expert William Weiss. *Id.* ALJ Joyner issued a partially favorable decision on April 27, 2005, finding Plaintiff entitled to a period of disability or DIB under Section 216(i) and 223, respectively, of the Social Security Act for the period beginning January 1, 2001 and ending June 1, 2002. Tr. 386-403. However, ALJ Joyner found that before January 1, 2001 and after June 1, 2002, the Plaintiff was not under a "disability," as defined in the Social Security Act. *Id.* ALJ Joyner determined that Plaintiff could perform a significant number of jobs in the local and national economies despite her limitations before January 1, 2001 and after June 1, 2002. Tr. 403. On April 10, 2006, the

Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 373. Plaintiff timely filed her appeal with this Court.

## II.  THE PARTIES' POSITIONS

Plaintiff requests that the Court reverse the Commissioner's decision and remand for payment of benefits or, in the alternative, remand for further proceedings. Plaintiff argues that the ALJ: (1) erred at step four by not properly considering the disability opinions of her treating psychiatrist, treating rheumatologist, and the medical expert at the hearing; (2) erred at step four in finding Plaintiff "generally credible" but then not applying her testimony to the entirety of the claim; and (3) erred in not adopting the supported testimony of the vocational expert. Dkt. #10 at 14. Defendant responds that the Commissioner's decision should be affirmed because: (1) the ALJ properly resolved conflicting medical evidence; (2) the ALJ properly found Plaintiff only partially credible; and (3) the vocational expert's testimony indicated that Plaintiff could perform other work. Dkt. #11 at 5.

## III.  STANDARD OF REVIEW

The Court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

REPORT AND RECOMMENDATION
PAGE - 3

## IV.  EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920. At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically severe impairments or combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the listings is disabled. *See Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. *Id.* at § (e). If the claimant is not able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

REPORT AND RECOMMENDATION
PAGE - 4

## V. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was 44 years old at the time of the January 2005 hearing before the ALJ. Tr. 84. She completed a high school education (Tr. 37), and she previously worked as a tool maker for Boeing (Tr. 125) and as an order clerk (Tr. 576). In her disability report, Plaintiff indicated that her condition limits her ability to work because the symptoms of muscle ache, stress, fatigue, and feelings of panic make it "hard to function physically and mentally," cause her to "cry for no apparent reason," and she cannot concentrate. Tr. 119. Other evidence relevant to Plaintiff's claims is incorporated into the discussion below.

## VI. THE ALJ'S DECISION

The ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. Tr. 388, 402. He determined that Plaintiff has the following severe impairments: somatoform disorder, undifferentiated pain type; chronic right foot stress fracture; affective disorder; and anxiety-related disorder. Tr. 393, 402. The ALJ found that these impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 402.

The ALJ determined that Plaintiff's baseline functioning includes the residual functional capacity ("RFC") to occasionally lift and/or carry 20 pounds; stand/walk 4 hours in an 8-hour workday, in 30 minute increments; sit 6 hours in an 8-hour workday; occasionally climb stairs and balance; and [follow] detailed but not complex instructions with limited public contact. *Id.* He also found that Plaintiff's RFC includes unlimited pushing and pulling; however, she should avoid ladders, kneeling, crouching, crawling, heights and hazards. *Id.*

The ALJ further determined that for the period of January 1, 2001 to June 1, 2002, Plaintiff was unable to function in a sustained manner for periods lasting up to 6 weeks once a year, or for one-week periods twice a year, and she was only able to occasionally lift and/or

carry 10 pounds; frequently lift less than 10 pounds; stand and/or walk for a total of 2 hours in an 8-hour workday, in 30 minute increments; sit for 6 hours in an 8-hour workday; and occasionally climb stairs and balance. *Id.* The ALJ found that Plaintiff should avoid ladders, ropes, scaffolds, kneeling, crouching, crawling, and heights or hazards. *Id.* He also found that during this time period, Plaintiff's mental RFC included the ability to follow detailed but not complex instructions, with limited public contact or contact with coworkers. *Id.*

The ALJ concluded that Plaintiff is unable to perform her past relevant work; however, she has the baseline RFC to perform a significant range of light work. *Id.* In reaching this conclusion, the ALJ found that Plaintiff and the lay witnesses were "generally credible insofar as they describe limitations unrevealed by objective medical findings and consistent with exacerbations in the claimant's mental disorders." Tr. 399.

At step five, the ALJ determined that although Plaintiff's exertional limitations do not allow her to perform the full range of light work, there are a significant number of jobs in the national economy that she could perform before January 1, 2001 and after June 1, 2002, including the unskilled jobs of basket filler and assembler. Tr. 402-03. Therefore, the ALJ ruled that before January 1, 2001 and after June 1, 2002, Plaintiff was not under a disability. Additionally, the ALJ concluded that from January 1, 2001 to June 1, 2002, there were no jobs the Plaintiff could have performed consistent with her vocational profile during that period and her inability to perform work on a sustained, continuous basis. Tr. 403. Accordingly, the ALJ ruled that Plaintiff was entitled to a period of disability or DIB under Section 216(i) and 233 of the Social Security Act for the period beginning January 1, 2001 and ending June 2, 2002. Tr. 403.

//

//

## VII. DISCUSSION

A. <u>ALJ'S EVALUATION OF MEDICAL EVIDENCE</u>

Plaintiff contends that her treating physicians, Dr. Nguyen and Dr. Carkin, and the medical expert at the hearing, Dr. Gustavson, all believe she is disabled and cannot work, and their opinions are not contradicted by any other opinions in the record. Dkt. #10 at 15. Thus, Plaintiff argues that the reasons the ALJ used for rejecting their opinions were neither clear and convincing, nor specific and legitimate. *Id.* The Commissioner responds that the ALJ properly summarized and resolved the conflicting medical evidence. Dkt. #11 at 6.

1. <u>Treating Physicians' Opinions</u>

As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability. *See Magallanes*, 881 F.2d at 751. Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *See Lester*, 81 F.3d at 830; *Magallanes*, 881 F.2d at 751-55.

(a) *Dr. Nguyen*

In a letter dated April 12, 2001, psychiatrist Dr. Nguyen stated that Plaintiff, who she had been treating since 1993, has severe recurrent major depression and panic disorder with agoraphobia. Tr. 251. Dr. Nguyen opined that both conditions "have been worsening in the last three years" and Plaintiff had been unable to work. *Id.* In a May 2001 letter, Dr. Nguyen

REPORT AND RECOMMENDATION
PAGE - 7

asserted that Plaintiff is "incapable of working on a regular and continuous and sustained basis due to her disorders." Tr. 254. Acknowledging that Plaintiff "has life stressors that involve her family," Dr. Nguyen also opined that even without such stressors, Plaintiff would "still not be able to work on a regular and continuous and sustained basis due to anxiety, panic, depression, poor concentration, feelings of being easily overwhelmed, agitation and social withdrawal." *Id*.

While the ALJ indicated that he gave considerable weight to Dr. Nguyen's 2001 statements regarding Plaintiff's worsening condition, he further explained that:

> Dr. Nguyen's assertions the claimant is "disabled" constitutes an opinion on an administrative finding specifically reserved to the Commissioner. In addition, Dr. Nguyen's 2001 capacity assessment appears to be based on the claimant's subjective endorsement symptoms, rather than clinical signs, laboratory testing, or other evidence in the record. For this reason, the undersigned gives significant weight to Dr. Fisher's MRFC assessment, since it is based on a thorough review of the medical record, and takes into account the claimant's limitations during acute episodes as well as during periods w[h]ere she is stabilized. The results of Dr. Mashburn's psychological testing – demonstrating that the claimant has no deficits in memory or cognitive functioning and also has a tendency to exaggerate – is also accorded significant weight insofar as it represents objective evidence that is consistent with Dr. Fisher's assessment.

Tr. 399 (internal citation omitted).

Here, because more weight was given to conflicting opinions from non-treating Dr. Fisher[2] and Dr. Mashburn, the ALJ needed to satisfy the "specific and legitimate reasons" standard in rejecting treading Dr. Nguyen's disability opinion. An ALJ can meet this burden by

---

[2] In the March 2000 MRFC assessment, Dr. Fisher opined that Plaintiff's "[c]ombination of moodiness/anxiety and attention to somatic complaints would reduce concentration during acute episodes," but this "would not completely inhibit [her] from remembering repetitive detailed instructions," and "she would be able to be reasonably consistent in a structured work environment." Tr. 226. In a Psychiatric Review Technique Narrative, he stated that Plaintiff has "no cognitive deficits," and "she has been anxious and depressed for many years and yet has been able to work at Boeing," Tr. 231. Acknowledging that Plaintiff "is not able to cope with problematic work situations," Dr. Fisher stated "there is no evidence that claimant would be unable to carry out instructions in a repetitive structured work environment which did not require interaction with others." *Id.*

REPORT AND RECOMMENDATION
PAGE - 8

setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751. The ALJ did so in this case.

This Court rejects Plaintiff's initial argument that the fact that disability is a finding reserved for the Commissioner is not a proper reason to reject Dr. Nguyen's opinions of disability. *See* Dkt. #10 at 15. Treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. *See* 20 C.F.R. 404.1527(e)((3); SSR 96-5p, 1996 WL 374183 at *2. Thus, in explaining his basis for giving more weight to the opinions of the non-treating physicians, it was not improper for the ALJ to expressly identify Dr. Nguyen's opinions of disability as opinions on an issue reserved for the Commissioner.

Plaintiff challenges the ALJ's statement that Dr. Nguyen's capacity assessment "appeared to be based on subjective symptoms rather than clinical signs, testing or other evidence," arguing that this reason is vague, and not specific and legitimate. Dkt. #10 at 15. However, if a treating source's medical opinion is not given controlling weight, it will be evaluated in accordance with factors provided for evaluating all medical source opinions. *See* 20 C.F.R. 404.1527(d). One of those factors is the nature and extent of the treatment relationship, which includes consideration of the treatment provided and the "*extent of examinations or testing the source has performed or ordered from specialists and independent laboratories.*" 20 C.F.R. § 404.1527(d)(2)(ii) (emphasis added). In this case, there is no evidence in the record that Dr. Nguyen conducted any objective testing of Plaintiff. Tr. 200-202, 220-223, 239, 251, 254, 312-361, 514-522. Accordingly, the ALJ properly considered this factor and the lack of objective testing constitutes a specific and legitimate reason for rejecting Dr. Nguyen's disability opinion.

REPORT AND RECOMMENDATION
PAGE - 9

Moreover, although Plaintiff claims that Dr. Nguyen's chart notes show that she performed mental status exams at every session, careful review of those notes does not support this claim. The record contains no treatment notes by Dr. Nguyen between November 1996 and January 1999, which includes Plaintiff's alleged disability onset date of June 27, 1998 and six months thereafter. And, while the record contains chart notes from sixty (60) sessions that Dr. Nguyen had with Plaintiff between January 1999 and October 2004 (Tr. 312-333, 514-522), the notes from only eleven (11) of those sessions show evidence that Dr. Nguyen performed mental status exams (MSE), as reflected in her notations that Plaintiff had a depressed, tearful and/or anxious mood and affect (Tr. 314, 321-22, 326-27. 329, 331, 333). In the remaining chart notes, Dr. Nguyen's summaries of Plaintiff's subjective symptoms simply extend onto the lines provided for MSE notes.

Plaintiff also contends that the ALJ improperly rejected Dr. Nguyen's opinion in favor of the opinion of non-treating, non-examining physician, Dr. Fisher. Specifically, Plaintiff argues that the ALJ's finding that Dr. Fisher's opinion was more valuable because he performed "a thorough review of the medical record" is not a specific and legitimate reason because all psychiatric records on which Dr. Fisher's review was based were produced by Dr. Nguyen. Dkt. #10 at 16. The Commissioner responds that Dr. Fisher's opinion was consistent with Dr. Mashburn's opinion and properly served as substantial evidence supporting the ALJ's decision that Plaintiff was not disabled before January 2001.

Where a non-treating physician's opinion contradicts that of a treating physician "but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, and legitimate reasons for doing so that are based on substantial evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citations omitted).

REPORT AND RECOMMENDATION
PAGE - 10

However, the opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

In the instant case, the ALJ did not rely solely on Dr. Fisher's opinion to reject Dr. Nguyen's disability opinion. The ALJ also pointed to the opinion of psychologist Dr. Mashburn, whose consultative examination of Plaintiff in July 2004 included objective psychological testing that formed the basis of his opinion.[3] Tr. 490-493. Moreover, the ALJ clearly indicates that the significant weight given to Dr. Mashburn's opinion was because it "represents objective evidence that is consistent with Dr. Fisher's assessment." Tr. 399. Thus, because Dr. Fisher's opinion was consistent with independent clinical findings in the record, it constitutes substantial evidence that specifically and legitimately supports the ALJ's reasons for rejecting Dr. Nguyen's opinion. *See Thomas*, 278 F.3d at 957.

Lastly, Plaintiff asserts that the ALJ improperly evaluated Dr. Mashburn's psychological report. Plaintiff argues that the ALJ's references to Dr. Mashburn's report were neither clear and convincing nor specific and legitimate because: (1) the ALJ failed to acknowledge Dr. Mashburn's finding that Plaintiff's reliability would be impaired; and (2) the ALJ stated that Dr. Mashburn found that Plaintiff had a "tendency to exaggerate," but what Dr. Mashburn actually reported was that Plaintiff's testing profile "may" show some "exaggeration of symptoms," and

---

[3] Dr. Mashburn administered the following tests: Wechsler Memory Scale-III (WSM-III), Trail Making A and B, and Minnesota Multiphasic Personality Inventory 2 (MMPI-2). In a Medical Source Statement regarding Plaintiff's mental ability to do work-related activities, Dr. Mashburn indicates that his findings on the WMS-III supported the assessment that Plaintiff's ability to understand, remember, and carry out instructions is not affected by her impairments. Tr. 494. Likewise, he indicated that his findings from the MMPI-2 test supported his opinion that Plaintiff is only moderately limited in her ability to interact appropriately with supervisors, to respond appropriately to work pressures in a usual work setting, and to respond to changes in a routine work setting. Tr. 495.

REPORT AND RECOMMENDATION
PAGE - 11

that her profile was "probably valid." *See* Dkt. #10 at 16; Dkt. #12 at 4. However, although the ALJ did not precisely quote or mention each of Dr. Mashburn's findings, this Court notes that an ALJ is not required to discuss every piece of evidence presented to him. Rather the ALJ must explain why "significant probative evidence has been rejected." *See Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984). In this instance, rather than rejecting Dr. Mashburn's opinion, the ALJ expressly accorded it significant weight. Tr. 399. The record also reflects that in identifying "reliability" as a capability that would be affected by Plaintiff's impairment, the ALJ explained that its effect was that Plaintiff "handles stress by somaticizing." Tr. 495. Accordingly, by including "somatoform disorder, undifferentiated pain type" among Plaintiff's severe impairments, the ALJ implicitly incorporated this portion of Dr. Mashburn's opinion into his findings.

In light of the above discussion, this Court concludes that the ALJ properly rejected Dr. Nguyen's opinion by giving specific and legitimate reasons supported by substantial evidence in the record.

(b) Dr. Carkin

In an April 2002 letter, Dr. Carkin opined that Plaintiff was "completely disabled from severe fatigue and musculoskeletal pain," which Dr. Carkin felt was resultant from Plaintiff's "long-standing severe depression and anxiety." Tr. 300. The ALJ rejected this opinion for the following reasons: (1) there is no objective basis for the opinion, and Dr. Carkin's assessment constitutes a default diagnosis based on an inability to explain Plaintiff's subjective pain symptoms with objective evidence; and (2) Dr. Carkin is a rheumatologist, not a psychiatrist or psychologist. Tr. 395.

Plaintiff argues that the ALJ improperly dismissed Dr. Carkin's opinion regarding Plaintiff's disabling condition. Yet, as noted in subsection (a) above, a factor properly

considered in weighing medical source evidence is the kind of examination or testing performed. *See* 20 C.F.R. § 404.1527(d)(2)(ii). Here, the treatment notes from Dr. Carkin's initial consultation with Plaintiff in December 1999 show that a rheumatologic review of systems was essentially negative. Tr. 209. Dr. Carkin also found that Plaintiff "has 6/18 fibromyalgia tender points, but relatively mild." *Id.* In notes from Plaintiff's follow-up visit in January 2000, Dr. Carkin further indicated that the results from lab tests done in December were all negative or normal. Tr. 244. Thus, the ALJ's reliance on the absence of such objective evidence in support of Dr. Carkin's disability opinion constitutes a specific and legitimate reason for rejecting Dr. Carkin's opinion.

Another factor that the adjudicator considers in weighing medical source evidence is "specialization." 20 C.F.R. § 404.1527(d)(5). Under this factor, generally more weight is given to the opinion of a specialist about medical issues related to his or her specialty than to the opinion of a source who is not a specialist. *Id.* In this case, the record shows that when assessing Plaintiff's mental impairments, the ALJ acknowledged that Dr. Carkin opined on more than one occasion that Plaintiff's myofacial pain was related to depression and anxiety. Tr. 391. And, rather than wholly rejecting this opinion, the ALJ, instead, gave little weight to Dr. Carkin's opinion that Plaintiff is "disabled" due to this impairment. Tr. 395. Given that assessment of the severity of mental impairments is not related to Dr. Carkin's rheumatology specialty, the ALJ's decision to give little weight to Dr. Carkin's disability opinion on this basis was sufficiently specific and legitimate.

2. <u>Medical Expert's Opinion</u>

Plaintiff contends that Dr. Gustavson legitimately agreed with the opinions of Dr. Carkin and Dr. Nguyen that Plaintiff is disabled, and the ALJ erred in rejecting his opinion. Dkt. #10 at 19. Specifically, Plaintiff argues that the ALJ's finding that Dr. Gustavson's

testimony was "somewhat convoluted and inconsistent" is a mistaken interpretation of that testimony. Dkt. #10 at 18; Dkt. #12 at 5. The Commissioner responds that, having properly rejected Dr. Carkin and Dr. Nguyen's opinions, the ALJ properly rejected Dr. Gustavson's concurring opinion. Dkt. #11 at 8.

As an example that Dr. Gustavson's testimony was "convoluted and inconsistent," the ALJ highlighted the fact that Dr. Gustavson testified that he agreed with Dr. Carkin's opinion that Plaintiff is disabled due to myofascial pain related to depression and anxiety, yet Dr. Gustavson's findings in an earlier Psychiatric Review Technique Form (PRTF) indicated that Plaintiff is not disabled.[4] Tr. 395, 573. Arguing that this interpretation was mistaken, Plaintiff points to the response given by Dr. Gustavson when the ALJ asked why he changed his testimony from his PRTF responses to agreeing with the opinions of disability.[5] Tr. 573. This Court concurs with Plaintiff's assertion that Dr. Gustavson's responses on the PRTF reflect that Plaintiff does not have functional limitations that meet the listings at step three in the sequential evaluation process. Dkt. #10 at 18. Moreover, such a finding at step three does not preclude a subsequent RFC assessment at step four that would support a determination of disability. *See* 20 C.F.R. § 404.1545. Therefore, the ALJ's reliance on this example did not establish a specific an legitimate reason for rejecting Dr. Gustavson's testimony. However, the record reflects that the ALJ identified two additional reasons for rejecting Dr. Gustavson's opinion, both of which

---

[4] On the PRTF, Dr. Gustavson indicated that Plaintiff has moderate limitations in her activities of daily living; moderate difficulties in maintaining social functioning; average or no significant problem with concentration; she would probably reach the marked level of limitation in persistance because of her pain; and no problems of decompensation. Tr. 561-62.

[5] Dr. Gustavson stated: "[I] think that the, the form allows you to answer four questions at the, you know, mild, moderate, marked or extreme level. And I don't know that I would, I don't think I would change any of the answers that I gave you. And that comes from looking at the, kind of the whole picture and not just the form, that I tend to agree with the treating physicians." Tr. 573.

REPORT AND RECOMMENDATION
PAGE - 14

satisfy the "significant and legitimate reasons" standard.

First, as discussed in section 1(b) *supra.*, the ALJ noted the absence of objective support for Dr. Carkin's disability opinion and that Dr. Carkin was a psychologist/psychiatrist. *Id.* Accordingly, having concluded that these were specific and legitimate reasons for rejecting Dr. Carkin's opinion, this Court concludes that the ALJ did not err in rejecting Dr. Gustavson's concurring opinion on this basis.

The ALJ also found Dr. Gustavson's testimony that he similarly agreed with psychiatrist Dr. Nguyen's 2001 assessment of "disability" to be somewhat contradictory because Dr. Nguyen made no reference to myofascial pain or pain of any kind in her disability opinion. Tr. 395, 254. The record contains substantial evidence supporting this as a specific and legitimate reason for rejecting Dr. Gustavson's opinion. Thorough review of Dr. Gustavson's hearing testimony shows that when the ALJ asked him where in the record there was support for Dr. Carkin's conclusion that Plaintiff is completely disabled from severe fatigue and musculoskeletal pain secondary to depression and anxiety, Dr. Gustavson indicated that he was relying on a disability form prepared by Dr. Nguyen on November 4, 1999. *See* Tr. 570, 572; Tr. 303-306. This form makes no reference to pain in describing Plaintiff's subjective symptoms or in listing Dr. Nguyen's objective findings. Likewise, when the ALJ questioned Dr. Gustavson on what symptoms formed the basis of Dr. Nguyen's May 2001 "disability" assessment, Dr. Gustavson acknowledged that the assessment made no reference to pain. Tr. 572-73. Dr. Gustavson further testified that " I think the two doctors are conceptualizing the illness, the disease, if you will, and in different ways, and I frankly would I tend to be more in agreement with Dr. [C]arkin than Dr. Nguyen who seems to keep treating the depression instead of the anxiety and the pain." Tr. 575. In light of these facts, it was not unreasonable for the ALJ to find that Dr. Gustavson's testimony that he agreed with both Dr. Carkin's and Dr. Nguyen's disability

REPORT AND RECOMMENDATION
PAGE - 15

1 opinions was convoluted and inconsistent.

## B. PLAINTIFF'S CREDIBILITY

Plaintiff argues that the ALJ erred at step four in finding her "generally credible" but then not applying her testimony to his conclusions for the entirety of the claims. Dkt. #10 at 14. Plaintiff contends that her claimed limitations are consistent with her level of activity. *Id.* at 21. The Commissioner argues that the ALJ properly cited Plaintiff's daily activities and her inconsistent statements in finding her only partially credible. Dkt. #11 at 9.

The ALJ's reasons for rejecting Plaintiff's testimony must be "clear and convincing," unless there is affirmative evidence showing that the claimant is malingering. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). The ALJ must identify what testimony he finds not credible and what evidence undermines the claimant's complaints. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). In assessing credibility, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluations, such as the claimant's reputation for lying and prior inconsistent statements concerning the symptoms; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) medical evidence tending to discount the severity of subjective claims. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

The record reflects that the ALJ adequately summarized Plaintiff's testimony at the hearing. *See* Tr. 392, 394, 396. The ALJ made the following statements regarding his evaluation of Plaintiff's credibility:

> As noted, consideration has also been given to the claimant's testimony, as well as testimony from third parties, including the clamant's mother, husband, and daughter. The undersigned finds the claimant and these individuals are generally credible insofar as they describe limitations unrevealed by objective medical findings and consistent with exacerbations in the claimant's mental disorders. However, the undersigned is also mindful of the results of psychological testing suggesting that the claimant has a tendency to exaggerate her symptoms, and that third parties may be influenced by exaggerated complaints. The claimant's

REPORT AND RECOMMENDATION
PAGE - 16

> conflicting reasons why she stopped working or cannot work also detract from her credibility and include being a single parent; being pregnant and having a hernia; maternity leave and hernia surgery; fatigue and irritability due to hyperthyroidism; agoraphobia, tearfulness, depressed mood, feeling overwhelmed and panic attacks; fibromyalgia; and major depression and panic disorder.

Tr. 399 (internal citations omitted).

Here, the ALJ first discounted Plaintiff's credibility based upon medical opinion evidence tending to discount the severity of the Plaintiff's subjective complaints. Tr. 399. In discussing the results of Plaintiff's MMPI-2 tests showing that she endorsed a number of psychological problems suggesting that she is experiencing a high degree of stress, clinical psychologist Dr. Mashburn opined that "although the profile is probably valid, it may show some exaggeration of symptoms." Tr. 492. The ALJ used Dr. Mashburn's opinion to support his finding that because Plaintiff may exaggerate her symptoms, third parties may be influenced by exaggerated complaints. Tr. 399. The ALJ also noted that Plaintiff's testimony showed evidence of inconsistent statements, specifically identifying the variety of Plaintiff's reasons Plaintiff gave for discontinuing work, not all of which were consistently attributed to her alleged impairments. *See* Tr. 38, 41, 189, 191, 205, 329, 528. In accordance with *Rollins*, these factors were appropriately considered by the ALJ and constitute clear and convincing reasons for discounting Plaintiff's credibility. 261 F.3d at 856-57.

C. <u>VOCATIONAL EXPERT'S TESTIMONY</u>

Plaintiff claims that the ALJ erred by not adopting the supported testimony of the vocational expert ("VE"). Dkt. #10 at 22. A vocational expert's testimony in a disability benefits proceedings "is valuable only to the extent that it is supported by medical evidence." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (*citing Sample v. Schweiker*, 694 F.2d 639, 643-44 (9th Cir. 1982)). If an ALJ relies upon vocational expert testimony, the hypothetical questions must be based on medical assumptions supported by substantial evidence

REPORT AND RECOMMENDATION
PAGE - 17

1  in the record that reflects the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163

2  (9th Cir. 2000). The ALJ's depiction of the claimant's disability must be accurate, detailed, and

3  supported by the medical record. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

4  Hypothetical questions posed to the vocational expert must set out *all* the limitations and

5  restrictions of the particular claimant. *Magallanes*, 881 F.2d at 756 (emphasis in original)

6  (citations omitted). If the assumptions in the hypothetical are not supported by the record, the

7  opinion of the vocational expert that claimant has a residual working capacity has no evidentiary

8  value. *Gallant*, 753 F.2d at 1456.

9      At the hearing, the ALJ initially gave the VE two hypotheticals for which the VE

10 identified a significant number of jobs in the national economy that Plaintiff could do, including

11 light duty as a basket filler or assembler under the first hypothetical, and sedentary jobs as a

12 semiconductor bonder, table sorter position, or a hand mounter under the second

13 hypothetical. Tr. 577-78. However, when the ALJ modified the second hypothetical[6] to

14 include the inability to persist for six weeks at a time during the year or the inability to persist

15 for a week or less twice a year, the VE testified that the claimant would not be able to maintain

16 employment. *Id.* Additionally, in response to questions from Plaintiff's counsel, the VE

17 testified that an individual who would have difficulty persisting for one-third of an average day

18 would not be able to sustain work. Tr. 579.

19     Here, Plaintiff challenges the ALJ's reliance on the modified second hypothetical,

20 arguing that the record does not support limitations that would last for weeks and then resolve

21 themselves, and these limitations were adopted for "the seemingly arbitrary period from January

---

[6] The ALJ's second hypothetical to the VE included the following: "Lift/carry 10, less than 10; stand/walk two out of eight at 30-minute increments; sit six out of eight; occasional stairs; no ropes, ladders, or scaffolds; occasional balance; no kneel, crouch, or crawl; no heights or hazards; not in public; limited coworkers; datailed but not complex, by that I mean . . . work that requires attention to detail, but she couldn't do work that requires the higher executive functions."

REPORT AND RECOMMENDATION
PAGE - 18

1, 2001 to June 1, 2002."[7] Dkt. #10 at 23. This Court agrees that the record contains no evidence that would arguably support the limitation in the hypothetical of an inability to persist for six weeks at a time during the year or for a week at a time twice a year. Thus, had the VE concluded that Plaintiff had a "residual working capacity" under this hypothetical, it would have had no evidentiary value. *See Gallant*, 753 F.2d at 1456. However, to the extent that the ALJ relied on the VE's opinion under this hypothetical, it was harmless error because the VE concluded that claimant would be unable to work.

Plaintiff also argues that the record shows she is unable to persist throughout a day, most days because of unpredictability caused by panic, anxiety, depression, somatization, and physical impairments that leave her fatigued, unable to concentrate and persist, and incapable of regular and continuous work activity for periods of time throughout the day. *Id.* at 23. Therefore, Plaintiff contends that her inability to work is supported by the VE's testimony that a person who would be unable to function for approximately one-third of a work day would not be able to work on a regular and continuous basis. *Id.* (*citing* Tr. 579). Here, however, Plaintiff has not identified evidence in the record clearly demonstrating that she would be "unable to function for approximately one-third of a work day." Additionally, as argued by the

---

[7] The ALJ stated that the finding that Plaintiff was unable to persist during this period was substantiated by the following: (1) Plaintiff's testimony from prior hearings describing more severe limitations in her functioning, including needing to stay in her bedroom twice a week, not dressing or speaking to her family members, and more fatigue; (2) testimony from Plaintiff's mother, husband and daughter that she required assistance with dressing, childcare, and household chores; and (3) Dr. Nguyen's letters from early 2001 stating that Plaintiff's condition had worsened since 1998. Tr. 398. The ALJ further stated that before and after this period, the severity of Plaintiff's mental and physical impairments decreased as exemplified by changes in her symptoms, including the ability to dress and bathe on a daily basis, engage in volunteer activities at her children's school, attend church 6 times a week, and avoid staying in her bedroom most of the day. Tr. 399 (citing 20 C.F.R. § 404.1594(b)(1) (a "medical improvement" is any decrease in the severity of impairments based upon positive changes in symptoms)).

REPORT AND RECOMMENDATION
PAGE - 19

Commissioner the VE's testimony indicated that Plaintiff could perform other work. Dkt. #11 at 12. Plaintiff has neither challenged the legitimacy of the limitations and restrictions described in the ALJ's first two hypotheticals, nor the VE's opinions about the jobs that could still be performed with those limitations. Moreover, although the Commissioner concedes a harmless error by the ALJ in regard to the light-work jobs the VE identified, if someone can do light work, the SSA determines that he or she can also do sedentary work. 20 C.F.R. § 404.1527(b). Therefore, because the VE also identified unskilled, sedentary jobs that could be performed by Plaintiff under the second hypothetical, remand for further proceedings is unnecessary in this instance.

## VIII. CONCLUSION

The Commissioner's determination to deny Plaintiff Disability Insurance Benefits is supported by substantial evidence and is free of legal error. Based on the record evidence, the undersigned recommends that the Commissioner's decision be AFFIRMED. A proposed Order accompanies this Report and Recommendation.

DATED this 18th day of May, 2007.

_____
MONICA J. BENTON
United States Magistrate Judge