UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIE M. KRAJACK-MEER<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　　　　　　　　Defendant. | No.  C06-766Z<br><br>ORDER |

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Monica J. Benton (the "R&R"), docket no. 13, and the Plaintiff's Objections thereto, docket no. 14.  The Court ADOPTS IN PART and DECLINES TO ADOPT IN PART the findings and recommendations of the R&R, AFFIRMS IN PART and REVERSES IN PART the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), and REMANDS to the agency with instructions for the payment of benefits in accordance with this Order for a period of disability beginning January 1, 2001.

ORDER  1–

## I.     BACKGROUND

The R&R provides a detailed background that shall not be repeated here. In short, Plaintiff Julie M. Krajack-Meer filed an application on December 1, 1999 for Disability Insurance Benefits, alleging disability since June 27, 1998. Plaintiff's case has been up and down on various appeals since she applied for benefits. This appeal concerns the decision of ALJ Arthur Joyner, issued April 27, 2005, which constitutes the final decision of the Commissioner. See generally Tr. 373, 386-403.

In step 1 of the disability analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. Tr. 402. In step 2, the ALJ found Plaintiff to be suffering from the following "severe" impairments: somatoform disorder, undifferentiated pain type; chronic right foot stress fracture; affective disorder; and anxiety-related disorder. Tr. 389, 393, 402. In step 3, he found that her impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 402. In step 4, the ALJ described a more limited residual functional capacity for the period between January 1, 2001 and June 1, 2002, than for the period before January 1, 2001 and after June 1, 2002. Tr. 398-399, 402. In step 5, the ALJ ultimately found Plaintiff disabled for the period from January 1, 2001, to June 1, 2002. Tr. at 403 ("From January 1, 2001 to June 1, 2002, there were no jobs that the claimant could perform consistent with her vocational profile during this period, as well as her inability to perform work on a sustained, continuous basis"). However, the ALJ found Plaintiff not disabled before January 1, 2001, or after June 1, 2002. Tr. 403 (". . . there are a significant number of jobs in the national economy that she could perform before January 1, 2001 and after June 1, 2002.").

The R&R recommends affirming the Commissioner's decision to award benefits for the period January 1, 2001 to June 1, 2002. Plaintiff submits three objections: (1) the ALJ failed to properly adjudicate the medical evidence; (2) the ALJ improperly evaluated Ms.

ORDER   2–

Krajack-Meer's residual functional capacity; and (3) the ALJ improperly randomly selected disability start and stop dates.

## II. DISCUSSION

### A. Standard of Review of Commissioner's Findings

The Court must affirm a decision denying benefits if it is supported by substantial evidence and based upon correct legal standards. Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The R&R, at page 3, discusses this standard of review in more detail.

### B. Standard of Review of R&R

Under the rules that guide the Court's review of a magistrate's report and recommendation and a party's objections thereto, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also FED. R. CIV. P. 72(b); Holder v. Holder, 392 F.3d 1009, 1022 (9th Cir. 2004). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### C. Authority to Remand or Award Benefits

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (sentence four). The Court "may direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). Remanding for a benefits award is particularly appropriate "where a claimant has already experienced lengthy, burdensome litigation." Vertigan v. Halter, 260 F.3d 1044, 1053 (9th Cir. 2001).

ORDER 3–

D.     **Objection #1: Medical Evidence**

      1.     **Dr. Nguyen**

Plaintiff challenges the ALJ's rejection of the opinion of Plaintiff's treating psychiatrist, Dr. Nguyen, that Plaintiff was not able to work on a sustained basis.  As the ALJ noted, "[t]he claimant's treating physician, Dr. Nguyen, opined in May 2001 . . . that the claimant is 'incapable of working on a regular and continuous and sustained basis due to her [mental] disorders.'"  Tr. 398 (quoting 17F/2, Tr. 254).  Dr. Nguyen further opined that even if Plaintiff's "life stressors that involve her family" were to "somehow disappear . . . she would still not be able to work on a regular and continuous and sustained basis due to anxiety, panic, depression, poor concentration, feelings of being easily overwhelmed, agitation and social withdrawal."  Tr. 254.  Although the ALJ gave "considerable weight to [Dr. Nguyen's] opinion," he also gave "significant weight" to the less favorable assessments of a non-examining, non-treating physician, Dr. Fisher, who opined in March 2000, and to the non-treating, examining physician, Dr. Mashburn, who opined in July 2004.  Tr. 399.

If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  The R&R points out that the ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  R&R at 9.  The R&R concludes that the ALJ met his burden because "there is no evidence in the record that Dr. Nguyen conducted any objective testing of Plaintiff."  Id.

The Court disagrees.  Dr. Nguyen conducted at least eleven mental status examinations of Plaintiff, and the R&R acknowledged as much.  R&R at 10; Tr. at 312-333, 514-522 (Dr. Nguyen's clinical notes).  Plaintiff's Objections contend that a psychiatrist, like Dr. Nguyen, performs mental status examinations, whereas a psychologist, like Dr.

ORDER  4–

Mashburn, performs psychological testing, and that either form of evaluation constitutes objective medical evidence.  Pl.'s Objections at 4 (citing 20 C.F.R. 404.1527(d)(2)(ii) (according weight to a source's medical opinion depending on "the kinds and extent of *examinations and testing* the source has performed . . . .") (emphasis added)).  Plaintiff is correct that there is no reason to give Dr. Mashburn's one-time psychological testing greater weight than Dr. Nguyen's mental status examinations, which were conducted over a five year period between January 1999 and October 2004.  Furthermore, as Plaintiff's Objections point out, it is not clear that Dr. Mashburn's report, as a whole, conflicts with Dr. Nguyen's opinions.  Pl.'s Objections at 5-6; see also Pl.'s Opening Brief, docket no. 10, at 16 (noting that Dr. Mashburn's findings that Plaintiff's cognitive functioning and memory were intact "did not address the depression, somatization, anxiety and affective disorders that Dr. Nguyen identified, and that the ALJ, in his decision, found were severe.").  Dr. Mashburn also never opines that Plaintiff is able to work on a sustained basis despite her mental impairments.  See Pl.'s Objections at 11; Tr. at 490-495 (the Mashburn report).  The ALJ has failed to meet his burden of setting forth the conflicting evidence.  Moreover, it is unclear whether and how the ALJ's "rejection" of Dr. Nguyen's May 2001 opinion affected his ultimate findings that she was not disabled before January 1, 2001 and after June 1, 2002.  The Court DECLINES TO ADOPT the R&R's conclusion, at page 12, that "the ALJ properly rejected Dr. Nguyen's opinion by giving specific and legitimate reasons supported by substantial evidence in the record."  Instead, the Court gives full weight to Dr. Nguyen's May 2001 opinion.

    **2.**    **Dr. Carkin**

In April 2002, Plaintiff's treating rheumatologist, Dr. Carkin, opined:

> I am a board-certified rheumatologist and have been working with Ms. Meer for quite some time.  She unfortunately suffers from severe fatigue and severe long-standing widespread disabling musculoskeletal pain.  The best name for her pain syndrome is myofascial pain syndrome, (fibromyalgia-like).  She has had extensive workup for rheumatoid arthritis lupus etc., and her laboratories

ORDER   5–

> are negative. This does not mean that she does not have disabling pain and fatigue. . . . I feel that her myofascial pain is a result of her long-standing severe depression and anxiety. . . . [S]he is completely disabled from severe fatigue and musculoskeletal pain. She is unlikely to improve in the foreseeable future. There are no medications or treatments currently available that are likely to return her to full functioning so that she will be able to work.

Tr. 300. The ALJ gave "little weight" to Dr. Carkin's opinion that Plaintiff is completely disabled by myofascial pain because: (1) "it is unsupported by the medical evidence," (2) it is "reliant on claimant's subjective complaints," and (3) "the issue of disability represents an administrative finding reserved to the Commissioner." Tr. 397. Two pages prior in the ALJ's decision, the ALJ rejected Dr. Carkin's opinion:

> [T]here is no objective basis for Dr. Carkin's opinion, and [Dr. Carkin's] assessment constitutes a default diagnosis based on an inability to explain the claimant's subjective pain symptoms with objective evidence. Dr. Carkin is also a rheumatologist, not a psychiatrist or psychologist.

Tr. 395.

The R&R recommends affirming the ALJ's decision to give little weight to Dr. Carkin by pointing out that Dr. Carkin's laboratory tests were all negative and that Dr. Carkin's "assessment of the severity of mental impairments is not related to Dr. Carkin's rheumatology specialty." R&R at 13. First, this is an erroneous characterization of Dr. Carkin's opinion, which does not assess the severity of Plaintiff's mental impairments. Second, the medical expert, Dr. Gustafson, testified that Dr. Carkin's clinical experience would allow him to attribute Plaintiff's somatoform pain to anxiety and depression. Tr. 570-575. Indeed, the ALJ's conclusion that Plaintiff suffers from severe somatoform disorder, undifferentiated pain type, Tr. 402, seems consistent with Dr. Carkin's opinion that Plaintiff is disabled by myofascial pain. The ALJ has failed to reconcile his finding under step 2 that Plaintiff suffers from severe somatoform disorder, undifferentiated pain type, with his decision to give little weight to Dr. Carkin. The Court DECLINES TO ADOPT the R&R's recommendation, at page 13, to affirm the ALJ's giving little weight to Dr. Carkin's opinion.

ORDER  6–

### E.  Objection #2: Residual Functional Capacity

Plaintiff argues that the ALJ improperly evaluated Plaintiff's residual functional capacity ("RFC") by giving significant weight to Dr. Mashburn's July 2004 opinion despite Dr. Mashburn's admission that Plaintiff's "major depression" was in "brief remission" at the time of evaluation. Tr. 493.  It is unclear which aspect of the RFC Plaintiff objects to that would have been connected to Dr. Mashburn's findings.  Although the ALJ acknowledged Dr. Mashburn's Global Assessment of Functioning ("GAF") rating of only 51 in his summary of Dr. Mashburn's findings, Tr. 393, the ALJ does not appear to rely on this low GAF score in assessing Plaintiff's RFC later in his decision.  See generally Tr. 399-401.

Plaintiff also challenges the ALJ's finding that "claimant's current baseline functioning suggests an ability to persist at chores or tasks that she wants to do, as well as a willingness to let others do things for her," including "bathing and dressing, running errands, light housework, volunteering for school projects, and taking vacations." Tr. 395.  Plaintiff's testimony from the hearings on November 2002, Tr. 71, and on January 14, 2005, Tr. 530-555, provides numerous examples of a more diminished capacity for accomplishing tasks of daily living than the ALJ assigned to her during the post-June 1, 2002 period in which he found her not disabled.  For example, the ALJ finds that Plaintiff volunteered for school projects. Tr. 395.  While this is a true statement, Plaintiff testified in November 2002 that she had trouble committing to two hours a week of volunteer activity, Tr. 71, and she testified in January 2005 that she only volunteered twice a month for forty-five minutes.  Tr. 532.  This volunteer activity would not support a finding by the ALJ that she has an ability to work on a sustained basis.  Similarly, the ALJ found that Plaintiff could run errands, Tr. 395, but that does not present the entire picture.  Although Plaintiff testified in 2005 that she typically ran errands in the morning after dropping her children off at school, she also testified that she had to rest for two to three hours every day after doing the errands.  Tr. 533. The R&R does not discuss Plaintiff's testimony regarding her daily activities and the ALJ's

ORDER  7–

RFC assessment even though the issues were raised in Plaintiff's Opening Brief, at pages 20-22. The R&R instead focuses on the ALJ's findings related to Plaintiff's credibility. R&R at 16-17. In any case, Plaintiff's November 2002 and January 2005 hearing testimony regarding her limited activities of daily living are consistent with her assertion that she is unable to work on a sustained basis. Accordingly, the Court DECLINES TO ADOPT the R&R's recommendation to affirm the ALJ's RFC assessment, to the extent the assessment was based on the ALJ's finding that "claimant's current baseline functioning suggests an ability to persist at chores or tasks that she wants to do."

In her Objections regarding the ALJ's RFC assessment, Plaintiff also challenges the ALJ's finding that Plaintiff's symptoms improved enough to allow her to work before January 1, 2001 and after June 1, 2002. Pl.'s Objections at 9. That issue is addressed below.

### F. Objection #3: Disability Start and Stop Dates

Plaintiff contends that "[t]he ALJ provided no legitimate analysis of his decision to start and stop Ms. Krajack-Meer's disability for a year and one-half in the middle of this eight year time period of disability." Pl.'s Objections at 3. The R&R explains that the ALJ substantiated this period of disability by relying on: (1) Plaintiff's testimony from the "prior" (April 2001) hearing in which Plaintiff described more severe limitations in her functioning, (2) testimony from Plaintiff's family members in 2001 that she needed assistance with dressing, childcare, and household chores, and (3) Dr. Nguyen's letters from early 2001 stating that the claimant's condition had worsened since 1998. Tr. 398; R&R at 19 n.7.

The Court finds that this evidence supports a January 1, 2001 start date but fails to support a June 1, 2002 end date for Plaintiff's disability. First, although the ALJ found that Plaintiff testified to severe impairments in April 2001, he also found that Plaintiff's hearing testimony in November 2002 and January 2005 "describes more severe limitations than those contained in an Activities of Daily Living and Socialization questionnaire completed by the claimant in December 1999." Tr. 394. Second, the ALJ found that after June 1, 2002, "the

ORDER 8–

severity of claimant's mental and physical impairments decreased as exemplified by changes in her symptoms, including the ability to dress and bath on a daily basis, engage in volunteer activities at her children's school, attend church 6 times a week, and avoid staying in her bedroom most of the day." Tr. 399.  In addition to mischaracterizing some of Plaintiff's testimony, the ALJ has failed provide any medical evidence that would support a finding of a "medical improvement" sufficient to show that Plaintiff was "able to engage in substantial gainful activity" after June 1, 2002.  20 C.F.R. §§ 404.1545(a), 404.1545(b)(1) (defining medical improvement as "any decrease in the medical severity of [Plaintiff's] impairments" that is based on "changes (improvement) in the symptoms, signs and/or laboratory findings associated with [Plaintiff's] impairment(s)").  Indeed, not a single physician or expert testified about any such medical improvement, and none testified that Plaintiff's disability ended on June 1, 2002.

Accordingly, the Court ADOPTS the R&R's recommendation to affirm the Commissioner's decision to deny benefits for the period between June 27, 1998 and December 31, 2000, and DECLINES TO ADOPT the R&R's recommendation to affirm the Commissioner's decision to deny benefits after June 1, 2002.

## III.  CONCLUSION

For the reasons outlined above, the Court ADOPTS IN PART and DECLINES TO ADOPT IN PART the R&R, docket no. 13.  The record in this case has been fully developed and further administrative proceedings would serve no useful purpose.  The record supports a finding that beginning on January 1, 2001, Plaintiff had no capacity to do any job reasonably available in the national economy.  Plaintiff has waited almost eight years for her disability determination and additional proceedings would only delay her receipt of Disability Insurance Benefits.  Accordingly, the Court AFFIRMS the Commissioner's decision to deny benefits for the period between June 27, 1998 and December 31, 2000, AFFIRMS the Commissioner's decision to award benefits for the period between January 1, 2001, and June

ORDER   9–

1, 2002, and REVERSES the Commissioner's decision to deny benefits for the period after June 1, 2002. The Court REMANDS to the agency with instructions for the payment of benefits in accordance with this Order for a period of disability beginning January 1, 2001.

IT IS SO ORDERED.

DATED this 13th day of August, 2007.

                                                 */s/ Thomas S. Zilly*
                                                 Thomas S. Zilly
                                                 United States District Judge

ORDER 10–